IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, : : : | |
| Plaintiff : : : | |
| vs. : : | Civil Action File No. 1:12-CV-04028-SCJ |
| BILLY WAYNE McCLINTOCK, individually, and dba MSC HOLDINGS, DIANNE ALEXANDER aka LINDA DIANNE ALEXANDER, : : : : : | |
| Defendants, : : | |
| MSC HOLDINGS USA, LLC, MSC HOLDINGS, INC., MSC GA HOLDINGS, LLC, : : : : | |
| Relief Defendants. : | |

**SEC'S BRIEF IN OPPOSITION TO DEFENDANT
ALEXANDER'S MOTION TO MODIFY ORDER FREEZING ASSETS**

Ms. Alexander presents herself as a sympathetic character. And she *is* a sympathetic character. But she is the architect of the predicament in which she now finds herself. She has consented to a permanent injunction enjoining her from violations of the registration and antifraud provisions of the federal securities laws. She has agreed that she will pay disgorgement and prejudgment interest. She has

consented to the entry of civil penalties against her. She is not the presumptively innocent criminal defendant who needs resources for a short time to defend herself against the government's allegations. She is the already adjudicated litigant who wants to spend on herself money that would otherwise go to her victims.

Ms. Alexander has lived for almost a decade on money defrauded from others and now finds herself without an honest way to meet her expenses. As much as a feeling heart wants a 70-year-old to be able to pay for her medicine, we cannot escape the immutable truth that every dollar that escapes the asset freeze comes from the pockets of one or more of Ms. Alexander's victims. They have supported her for long enough.

**Living Expenses**

There are securities fraud cases— such as insider trading cases—in which the violations create a pool of profits and the victims are difficult or impossible to identify. In such cases relief from an asset freeze is more common, but only during that time in which the defendant has been accused but culpability has not been fully adjudicated. This case is different. Ms. Alexander has consented to a permanent injunction. She has agreed to pay disgorgement, prejudgment interest, and civil penalties. Her victims are fully identifiable. Because of Ms. Alexander's

conduct they will endure hardships that rival or exceed those of which she now complains.

The budget that Ms. Alexander submits in support of her request from the freeze hurts her more than it helps; it is a list of things that she has been buying for herself with other people's money. Ms. Alexander has been supporting her grandchildren to the tune of $1,000 per month. She has been paying $2,000 per month to a "caregiver." She has been maintaining residences on both the east coast and the west coast on the backs of people who might, because of her, lose the only home they have ever owned. And now she wants more. The answer should be "no."

All of the cases cited by Ms. Alexander's counsel arise from a point of tension during which the defendant has been accused of wrongdoing, but not yet adjudicated. In that tension the law seeks to balance the presumption of innocence with the need to preserve assets for equitable relief in the event the defendant is found culpable. That tension does not exist here. Ms. Alexander has consented to the relief sought. She has consented to entry of a permanent injunction which enjoins her from violations of the registration and antifraud provisions of federal securities laws. Alexander Consent at ¶2. She has consented to pay disgorgement, prejudgment interest, and civil penalties in an amount to be determined. Consent

at ¶3. On that point, Ms. Alexander's Consent reads as follows: "Defendant agrees that the Court shall order disgorgement of ill-gotten gains, prejudgment interest thereon, and a civil penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)]." Alexander Consent at ¶3. Ms. Alexander's case, therefore, lacks the tension that has driven some courts to order — for the period before liability is determined — living expenses and attorney's fees.

**Attorney's Fees**

Ms. Alexander is ably represented. Her counsel chose the best course to resolve the SEC's allegations, minimizing fees by reaching the inevitable result sooner. But there is little lawyering left to be done in this case. The defendant has been enjoined and agreed to disgorge her ill-gotten gains in an amount to be determined, and has agreed to further sanction in the form of civil penalties, also in an amount to be determined. Ms. Alexander is asking to spend money that she already has agreed to give up. She will find no authority for that proposition.

In considering requests to use frozen funds for attorneys' fees, courts have frequently placed investors' interests over those of defendants. In SEC v. Comcoa Ltd., 887 F. Supp. 1521 (S.D. Fla. 1995), for example, the court refused to modify an asset freeze to allow payment of legal fees, noting that the use of frozen funds

for those fees had been disallowed even in cases involving civil forfeiture and criminal violations. Id. at 1524 (citing cases). The court observed that "in all of [those] cases, the courts have essentially held that a defendant has no right to spend another's money for services rendered by an attorney, even if those funds are the only way that the defendant will be able to retain counsel of his choice." Id. See also SEC v. Quinn, 997 F.2d 287, 289 (7th Cir. 1993) ("just as a bank robber cannot use the loot to wage the best defense money can buy, so a swindler in securities markets cannot use the victims' assets to hire counsel who will help him retain the gleanings of crime"); SEC v. Roor, 1999 U.S. Dist. LEXIS 11527, No. 99-3372, 1999 WL 553823 at *2 (S.D.N.Y. 1999) (SEC defendant "may not use income derived from alleged violations of the securities laws to pay for legal counsel"); SEC v. Coates, 1994 U.S. Dist. LEXIS 11787, 1994 WL 455558 at *3 (S.D.N.Y. 1994) ("defendant is not entitled to foot his legal bill with funds that are tainted by his fraud").

In Roor, the Court refused to release even funds not directly attributable to the fraud to pay attorney's fees, explaining that "while money borrowed against the equity in [defendant's] home may not be the proceeds of fraud, there exists a likelihood that [defendant] will soon have significant personal liabilities to the

government and to the victims of a fraud he is alleged to have perpetrated." Roor, 1999 WL 553823 at *3.

**Funding the Pursuit of a Plan of Distribution**

The SEC will file a motion to appoint a Receiver in this case. The receivership will need to be funded initially by the remaining cash. The Receiver will perform an evaluation of whether litigation against those who received so-called "referral fees" for expanding the scam and against investors who recovered much more than they invested would be worth the cost of that litigation. If possible, the Receiver will propose pursuit of such claims via a contingent fee contract, which will drastically reduce the cost of litigation and ensure that no lawsuit costs more than it recovers.

Every dollar granted Ms. Alexander in response to this motion is a dollar that the Receiver cannot return to defrauded investors. If money could be created as easily as Ms. Alexander represented to her victims—through a shadowy European trust—releasing some of it to Ms. Alexander now would not be as objectionable. But money neither grows on trees nor flows from clandestine trusts. The money that Ms. Alexander wants this Court to give her is money that belongs to the victims of this scam, the last people that Ms. Alexander should expect to fund her now.

### Need for a Hearing

Ms. Alexander has made certain allegations regarding when she acquired one of her two homes located within the Northern District of Georgia. Putting aside for a moment the immateriality of that assertion, she has not yet produced evidence to substantiate that claim. The SEC therefore requests that the Court set a hearing on this motion at which Ms. Alexander can provide evidence on that point. At that hearing the SEC will be able to examine Ms. Alexander about her attempts to evade this Court's asset freeze Order. The Court should hear all relevant evidence before deciding to allow Ms. Alexander to continue to live off of money stolen from others.

**Conclusion**

For the foregoing reasons, the SEC asks the Court to deny Ms. Alexander's Motion to Modify Order Freezing Assets.

Dated: December 21, 2012                    /s/ Pat Huddleston II
                                                                                        Pat Huddleston II
                                                                                        Senior Trial Counsel
                                                                                        Georgia Bar No. 373984

SECURITIES AND EXCHANGE COMMISSION
950 East Paces Ferry Road, N.E., Suite 900
Atlanta, Georgia 30326
404-842-7616
huddlestonp@sec.gov

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of this Court using the CM/ECF system which will send notice of such filing to counsel of record.

Dated:  December 21, 2012

*/s/Pat Huddleston II*
Pat Huddleston