IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SECURITIES AND EXCHANGE       )
COMMISSION,                   )
                              )
        Plaintiff,            )
                              )       CIVIL ACTION FILE
v.                            )
                              )       NO. 1:12-CV-04028-SCJ
BILLY WAYNE McCLINTOCK        )
individually, and dba MSC     )
HOLDINGS, DIANNE              )
ALEXANDER aka LINDA           )
DIANNE ALEXANDER,             )
                              )
        Defendants,           )
                              )
MSC HOLDINGS USA, LLC,        )
MSC HOLDINGS, INC., MSC GA    )
HOLDINGS, LLC,                )
                              )
        Relief Defendants.    )

## RECEIVER'S FIRST INTERIM REPORT

Jason L. Nohr, the Receiver appointed by this Court by Order dated February 11, 2013, files his First Interim Report to describe his investigation and detail his progress towards completing the tasks assigned by the Court.

The Receiver has been engaged in all of the foregoing activities to date in order to identify and recover assets and timely complete the tasks set forth in the Order of Appointment. The Receiver's preliminary investigation indicates

possible claims against the Defendants and third parties that will likely result in generating additional funds to increase the likely distribution to claimants after administrative fees and expenses. However, because previously unidentified bank accounts and records of the Defendants have recently been identified (and those records have not yet been received), the Receiver requests an additional sixty (60) days from the date of this report to make a recommendation concerning continuing the receivership and the identification of viable third-party claims.

The Receiver is mindful of the need to balance the interests of identifying and pursuing viable third-party actions against the need to preserve the assets of the Receivership Estate. The Receiver continues to be judicious with the expenditure of time on this case and will complete this initial review and report well within the agreed upon fee limitation he provided to the SEC for this initial phase of investigation. The Receiver does **not** request any increase in the limits upon his fees, and will complete this phase of the investigation well within the agreed upon restrictions.

### Procedural and Factual Background

On November 19, 2012, the U.S. Securities and Exchange Commission ("SEC") filed an application for a temporary restraining order and other equitable relief, alleging that Defendants Billy Wayne McClintock, individually and doing

business as MSC Holdings ("McClintock"), and Dianne Alexander a/k/a Linda Dianne Alexander ("Alexander") were operating a type of Ponzi scheme known as a "prime bank fraud" from 2002 to the present using entities called MSC Holdings, Inc., MSC GA Holdings, LLC, and MSC Holdings USA, LLC (collectively "relief defendants").

The SEC alleged that McClintock and Alexander raised over $15 million from over 200 investors in more than 20 states, including Georgia, by telling investors that their money would be placed with a clandestine overseas entity that McClintock and Alexander refer to only as "the Trust." McClintock and Alexander misrepresented that the Trust would generate a return of at least 38 percent.

On the same day, November 19, 2012, this Court granted the SEC application and entered an Order freezing assets of the Defendants, prohibiting the destruction of documents, and granting additional relief.

On February 11, 2013, the Court entered an Order appointing Jason L. Nohr as Receiver (the "Order of Appointment").  The Order of Appointment grants the Receiver access to assets, financial and bank accounts, and real property of the Defendants, the directive to recover, conserve, and expand the assets of the Receivership Estate, and, among other things, the authority to investigate and prosecute claims of the Receivership Estate against third parties.

The SEC's application for a temporary restraining order and other equitable relief determined that dozens of people received over four million dollars in so-called "referral fees" as compensation for introducing new investors to the Defendants' scam, with such "fees" representing the ill-gotten gains that must be returned and distributed to defrauded investors.

On November 28 and 29, 2012, Defendants McClintock and Alexander (respectively) consented to the entry of permanent injunctions against them and agreed that the amount of disgorgement and civil penalties they would pay would be determined at a later date.

Defendant Alexander subsequently moved to partially lift the asset freeze on December 11, 2012 with respect to her monthly social security income and amounts allegedly necessary for the payment of attorneys' fees.  On February 14, 2013, the Court entered an Order modifying the asset freeze to allow Defendant Alexander to collect her monthly social security benefits.

### The Receiver's Activities To Date

Pursuant to the Court's Order of Appointment, the Receiver is to file an interim report within sixty (60) days addressing the Receiver's investigation to date, including identifying the assets and liabilities of the Receivership Defendants, identifying assets held by others that may be recovered by the Receiver, and an

initial appraisal of the prospects for third party claims against those in possession

of assets of the Receivership Estate, including but not limited to those receiving

referral commissions and claims against investors who received more from the

illicit scheme than they invested.

Pursuant to the Court's Order of Appointment, the Receiver and his staff

have been diligently engaged in completing the tasks he has been assigned to

complete.  The Receiver has initially been engaged in identifying and recovering

the assets of the Receivership Estate, ascertaining whether the Defendants have

assets of value that may be recovered and sold, identifying where the Defendants

transferred the money received from "investors" as a result of their fraudulent

activities, and investigating potential claims against third parties.

The following is a summary of the Receiver's specific activities to date:

- Identified, located contact information, and presented notice of the
  receivership to fifty-eight (58) separate banking institutions in Florida,
  California, and nationally regarding potential accounts of the
  Defendants. The Receiver sent notice of the receivership and the asset
  freeze, along with requests for financial documents and records, to
  these financial institutions across the country and in proximity to the
  Defendants' residential locations.  Those notices identify the

Receivership Defendants, the multiple other entities through which

they operated, and demanded remittance of funds held in any

Receivership accounts.

- Established a bank account in the name of the Receivership Estate.

- The Receiver recovered assets belonging to the Receivership Estate

  pursuant to an alleged "donation" by Defendant Alexander to R&A

  Ministry, Inc. in the amount of $91,284.03.  The transfer was made on

  November 29, 2012, in apparent violation of the Court's Asset Freeze

  Order of November 19, 2012 and the consent to permanent injunction

  agreed to by Alexander on November 28, 2012.  Upon demand by the

  Receiver for the return of the "donation," Robert Rohm of R&A

  Ministry presented a check to the Receiver for those funds on March

  6, 2013.  Those funds have been deposited in the Receivership

  Account.

- Filed timely Notices of the Receivership in multiple jurisdictions

  where third party actions may later be necessary (pursuant to 28

  U.S.C. § 754) in the United States District Courts for the Middle

  District of Florida and the Southern, Eastern, and Central Districts of

  California.

- Reviewed banking records of two separate Wells Fargo accounts for and Billy Wayne McClintock.

- Contacted counsel for Defendant McClintock concerning failure to furnish financial documents and sworn statements required by the Court's Order of Appointment.

- Investigated, researched, and identified real property in Florida, Georgia, and California belonging to Defendants McClintock and Alexander, including property purportedly transferred to various "trusts."  Located, contacted, and provided Notice of Receivership to servicer of mortgage (Cenlar FSB) for Defendant Alexander's real property located at Lake Lanier.

- Performed title searches and filed *lis pendens* on real property belonging to Defendants Alexander and McClintock in Florida and Georgia.

- Reviewed financial documents and financial statement provided by Defendant Alexander.

- Reviewed documents for five separate accounts from Wells Fargo bank (including accounts for MSC Holdings and Linda Dianne Alexander).

- Interviewed and reviewed documents provided by attorney William Slater Vincent concerning legal work for Defendant Alexander and the establishment of the "Grace Abounds" trusts and escrow account.

- Interviewed and reviewed all documents provided by Mitchell Davis regarding tax filing prepared for Defendant Alexander.

- Reviewed documents received from Fifth Third Bank for account of Defendant McClintock.

- Reviewed documents received from Bank of America for account of relief defendant MSC Holdings.

- Reviewed documents received from Cadence Bank for account of relief defendant MSC Holdings.

- Reviewed documents received from SunTrust Bank for account of relief defendant MSC Holdings.

- Reviewed statements from JP Morgan Chase for credit accounts held by Alexander and McClintock.

- Sent Notice of the Receivership and demanded the production of information and documents to Paradise Holdings, LLC, an entity that received $400,000 from Defendant McClintock in 2007.

- Engaged in ongoing communications with defense counsel regarding the location, value, and potential sale of Defendant Alexander's personal assets, including two automobiles, located in Carlsbad, California. Engaged in communications with and provided Notice of Receivership to landlord for Defendant Alexander's rental property in Carlsbad, California to ensure non-destruction of personal property during eviction proceedings.

- Presented Notice of Receivership and requested documents and information to Cloud Resources (precious metals purchased by Defendant Alexander), Norman Dadian (trustee for "Grace Abounds Trust" established by Defendant Alexander), and Jade Law Offices ("Grace Abounds Trust" established by Defendant Alexander).

- Sent Notice of Receivership and asset freeze letters to Learn Waterhouse Receivership (subject to a potential claim of recovery by Defendant Alexander), First Choice Management Service (a receivership subject to a potential claim of recovery by Defendant Alexander), and Hide Away Storage (holding potential personal property of Defendant McClintock).

- Communicating with investors and organizing contact information and amounts paid to and received from the Defendants.

- Reviewing and organizing data concerning "referral fees" paid by the Defendants to individuals as an incentive to increase the number of "investors" in the Defendants' program.

The foregoing represents a summary of all of the Receiver's activities to date.  As discussed below, additional banking records have been recently identified and requested.  Because these records may impact upon the existence of viable third party claims, the Receiver requests additional time in which to obtain and examine these records before making his ultimate recommendations.

**The Receiver's Report and Request For Additional Time**

The Receiver has been engaged in all of the foregoing activities to date in order to identify and recover assets and timely complete the tasks set forth in the Order of Appointment.  The Receiver's preliminary investigation indicates viable claims against the Defendants and third parties whose pursuit will most likely result in generating additional funds to increase the likely distribution to claimants after administrative fees and expenses.  However, because previously unidentified bank accounts of the Defendants have recently been identified and records requested, the Receiver requests an additional sixty (60) days to make a

recommendation concerning continuing the identification and viability of third-party claims.

The Order Appointing Receiver provided the Receiver with sixty (60) days from appointment in which to conduct an investigation, report his findings, and make recommendations concerning the following areas: (1) the assets and liabilities of the Receivership Defendants; (2) assets held by others; and, (3) "third party claims, including, but not limited to, claims for recovery of commissions, referral fees, or any incentive payment for introducing new investors to the scheme described in the SEC's complaint, and claims against investors who received from the scheme more than they invested."  Order of Appointment, at 23.

As set forth above, the Receiver has been diligently engaged in completing all three categories of tasks, including investigating potential claims against third parties and the recovery of assets to increase the amounts available for distribution to claimants.  The Receiver and his staff have reviewed thousands of pages of bank records to date to assess the assets and liabilities of the Receivership and Relief Defendants.  The Receiver believes that viable third party claims exist based upon the records reviewed and analysis conducted to date.  However, the receipt and analysis of recently identified and requested banking records is necessary to provide a reliable recommendation about third party claims.

By closely analyzing voluminous banking records, the Receiver and his staff have recently identified previously unknown bank accounts of the Defendants and requested those records. Once received, those banking records may identify the location of additional assets of the Receivership Estate and claims against third parties. Additional time is needed, however, to review those banking records (which have been requested but not yet provided) prior to making any recommendations about continuing the receivership and pursuing third party claims.

Accordingly, the Receiver respectfully requests an additional sixty (60) days to undertake review of these additional banking records and continue his investigation into the Defendants' recoverable assets and the existence of viable third party-claims. The Receiver continues to be judicious with the expenditure of time on this case and will complete this initial review and report well within the agreed upon fee limitation he provided to the SEC for this initial phase of investigation. The Receiver, therefore, does *not* request any increase in the limits upon his fees for conducting this initial phase of the investigation.

The Receiver is also compiling records and lists of the dozens of people who received so-called "referral fees" as compensation for introducing new investors to the Defendants' illicit scheme, as well as gathering and analyzing those records

indicating which "investors" received more than they put into the Defendants'

operation.  Both categories represent viable third party claims belonging to the

Receivership Estate by which the Receiver intends to increase the assets that may

be ultimately paid out to defrauded investors (or claimants).

      The Receiver is mindful of the need to balance the prospects for successful

recovery against the costs, fees, and expenses of any third-party actions and will

take all these factors into account in making his ultimate report and

recommendations concerning third party claims.  The Receiver continues to be

judicious with the expenditure of his time and expenses for this reason and the

need to preserve and increase the assets of the Receivership Estate for ultimate

distribution to investors and claimants.

      The Receiver agreed to a fee limitation for his activities and investigation up

through and including his initial report concerning whether the receivership should

continue further in order to pursue claims against third parties and the recovery of

additional assets for ultimate distribution to claimants.  The request for additional

time will not impact this fee limitation, as the Receiver is *not* asking for an

increase in the limitations on his fees for completing the initial phase of his

investigation and report and recommendations concerning viable third party claims

and continuing the receivership, as provided by the Court's Order of Appointment.

In conclusion, the Receiver requests an additional sixty (60) days from the date of this report in which to conduct his investigation into the location of Receivership assets and prepare a report and recommendation concerning the viability of third-party claims and the continuation of the receivership.

Respectfully submitted this 15th day of April, 2013.

**CAUTHORN, NOHR & OWEN**

 /s  Jason L. Nohr
Georgia Bar No. 545435

Receiver

212 Church Street
Marietta, Georgia  30060
770.528.0150
770.528.0160 – facsimile
jln@cauthornnohr.com

## CERTIFICATE OF SERVICE

This certifies that I have this day served a copy of the foregoing *Entry of Appearance* via the CM/ECF electronic filing system which will send notice of such filing to counsel of record.

This 15th day of April, 2013.

                                        /s  Jason L. Nohr
                                        Georgia Bar No. 545435
                                        Receiver

**CAUTHORN, NOHR & OWEN**
212 Church Street
Marietta, Georgia  30060
770.528.0150
770.528.0160 – facsimile
jln@cauthornnohr.com