IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | |
| | ) | CIVIL ACTION FILE |
| v. | ) ) | NO. 1:12-CV-04028-SCJ |
| BILLY WAYNE McCLINTOCK individually, and dba MSC HOLDINGS, DIANNE ALEXANDER aka LINDA DIANNE ALEXANDER, | ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| MSC HOLDINGS USA, LLC, MSC HOLDINGS, INC., MSC GA HOLDINGS, LLC, | ) ) ) ) | |
| Relief Defendants. | ) | |

**RECEIVER'S FIRST INTERIM APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES AND BRIEF IN SUPPORT**

Jason L. Nohr, the duly authorized and acting Receiver (the "Receiver"), files this First Interim Application seeking this Court's approval to pay the Receiver's fees and expenses.

## Procedural and Factual Background

On November 19, 2012, the U.S. Securities and Exchange Commission ("SEC") filed an application for a temporary restraining order and other equitable relief, alleging that Defendants Billy Wayne McClintock, individually and doing business as MSC Holdings ("McClintock"), and Dianne Alexander a/k/a Linda Dianne Alexander ("Alexander") were operating a type of Ponzi scheme known as a "prime bank fraud" from 2002 to the present using entities called MSC Holdings, Inc., MSC GA Holdings, LLC, and MSC Holdings USA, LLC (collectively "relief defendants").

The SEC alleged that McClintock and Alexander raised over $15 million from over 200 investors in more than 20 states, including Georgia, by telling investors that their money would be placed with a clandestine overseas entity that McClintock and Alexander refer to only as "the Trust." McClintock and Alexander misrepresented that the Trust would generate a return of at least 38 percent.

On the same day, November 19, 2012, this Court granted the SEC application and entered an Order freezing assets of the Defendants, prohibiting the destruction of documents, and granting additional relief.

On February 11, 2013, the Court entered an Order appointing Jason L. Nohr as Receiver (the "Order of Appointment"). The Order of Appointment grants the

Receiver access to assets, financial and bank accounts, and real property of the Defendants, the directive to recover, conserve, and expand the assets of the Receivership Estate, and, among other things, the authority to investigate and prosecute claims of the Receivership Estate against third parties.

The SEC's application for a temporary restraining order and other equitable relief determined that dozens of people received over four million dollars in so-called "referral fees" as compensation for introducing new investors to the Defendants' scam, with such "fees" representing the ill-gotten gains that must be returned and distributed to defrauded investors.

On November 28 and 29, 2012, Defendants McClintock and Alexander (respectively) consented to the entry of permanent injunctions against them and agreed that the amount of disgorgement and civil penalties they would pay would be determined at a later date.

Defendant Alexander subsequently moved to partially lift the asset freeze on December 11, 2012 with respect to her monthly social security income and amounts allegedly necessary for the payment of attorneys' fees.  On February 14, 2013, the Court entered an Order modifying the asset freeze to allow Defendant Alexander to collect her monthly social security benefits.

### The Receiver's Activities To Date

Pursuant to the Court's Order of Appointment, the Receiver filed an interim report on June 14, 2013 addressing the Receiver's investigation to date, including identifying the assets and liabilities of the Receivership Defendants, identifying assets held by others that may be recovered by the Receiver, and an initial appraisal of the prospects for third party claims against those in possession of assets of the Receivership Estate, including but not limited to those receiving referral commissions and claims against investors who received more from the illicit scheme than they invested.

Pursuant to the Court's Order of Appointment, the Receiver and his staff have been diligently engaged in completing the tasks he has been assigned to complete.  The Receiver has initially been engaged in identifying and recovering the assets of the Receivership Estate, ascertaining whether the Defendants have assets of value that may be recovered and sold, identifying where the Defendants transferred the money received from "investors" as a result of their fraudulent activities, and investigating potential claims against third parties.  The Receiver's Report and Recommendation to Continue Receivership In Order to Pursue Third Party Actions was filed on June 14, 2013, and outlined his investigation, the viable

third party claims the Receiver has uncovered, and his recommendations for pursuit of those third party claims.

### Request for Compensation

By this application, the Receiver asks the Court to approve payment of the fees of the Receiver and reimbursement of the expenses incurred for the period February 11, 2013 through June 30, 2013 (the "Time Period").

Pursuant to the SEC Receivership Billing Instructions the SEC's Standardized Fund Accounting Report ("SFAR") for this Time Period is attached as Exhibit "A" to this Fee Application.

Also pursuant to the SEC Receivership Billing Instructions the fee schedule for all professionals and paraprofessionals working with the Receiver on this case is attached to this Fee Application as Exhibit "B," and the Receiver's Certification as to the information contained in this application is attached as Exhibit "C."

As is customary, the Receiver and his team work on an hourly basis, keeping track of the time spent and multiplying those hours by the respective hourly rates, all of which have been discounted for the benefit of the investors.

During the Time Period, the Receiver and his team incurred fees of $47,622.50 for 442.50 hours of work, and incurred case-related expenses of $8,920.78.  The Receiver has also written off or "no billed" fees of $6,091.00 for

51 hours of work to benefit investors.  The Receiver has attached as Exhibit "D" a detailed invoice from Cauthorn Nohr & Owen reflecting the time spent, the applicable hourly rates of the Receiver and his legal assistants, and the expenses incurred.  The Receiver has attached as Exhibit "D1" a breakdown of the billing for each team member who performed work for the receivership.  The Receiver respectfully asks that the Court approve payment of that invoice and authorize him to pay it in full.  As stated in the Receiver's bid letter, he and his team members have kept the fees for the initial investigative work in this Receivership below $50,000.00.  The Fee Application attached hereto as Exhibit "D" includes fees of $47,622.50 for 442.50 hours of work, which equate to a blended hourly rate of $107.62.

## BRIEF IN SUPPORT OF APPLICATION

In support of this Application, the Receive cites to the facts generally considered by Courts in awarding compensation to attorneys for services performed in connection with the administration of a receivership estate.  The Fifth Circuit gave us the "Johnson Factors," in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974) and the Eleventh Circuit adopted them in *Norman v. Housing Authority of City of Montgomery,* 836 F.2d 1292 (11th Cir. 1988).  The Receiver addresses each of those factors below.

The Time and Labor Required.  The Receiver and his team continue to identify, marshal, and preserve the assets of the Receivership Estate.  Those assets include money received from various banks accounts previously under the control of the Defendants, hundreds of thousands of dollars in precious metals and gold coins, and securing real property in Florida and Georgia.

During this period, while the Receiver and his team have had to spend a great deal of time and effort, and have had to incur substantial expenses in the early investigative stages of this case, all of them were necessary to discharging the duties of the receivership.  Exhibit "D" details those effort and those expenses.

The Novelty and Difficulty of the Questions.  Some of the Receiver's tasks have involved novel and complex factual and legal questions.  Indeed, by its very nature, a receivership is unique and complex.

The Skill Requisite to Perform the Service.  Having litigated cases involving the kind of offering fraud involved in this case, the Receiver has the unique skills necessary to the administration of this Receivership.  His team members have the requisite skills to assist him.  The Receiver has served as counsel for a court-appointed Receiver in four cases in the Northern District of Georgia, three for the SEC and one for the Federal Trade Commission.  In each of those cases, the Receiver was retained to maximize the assets of the receivership estate through

professional malpractice actions against third parties.  In each of those cases, a substantial recovery was obtained and the court approved the proposed plans of distribution without alteration.  All fee applications in those cases were approved without negative comment, alteration, or reduction.

The Receiver has filed successful lawsuits against culpable third parties, including law firms in New York and Georgia, and has recovered amounts for investors in the millions of dollars and the recovery has always exceeded the fees and the cost to the receivership.  The Receiver's team includes staff, paralegals and attorneys that are experienced in receivership work and available to devote their attention to this case immediately.

<u>The Preclusion of Other Employment Due to Acceptance of the Case.</u>  The Receiver is a partner in a small law firm.  The Receiver's relatively low overhead allows him to perform his duties at a very low cost.  Being a partner in a small firm, though, means that the Receiver must decline other cases so that he and his team can devote their attention to the quick, efficient, and thorough completion of the tasks assigned by the Court.

<u>The Customary Fee.</u>  The Receiver and his professionals respectfully represent that the hourly rates set forth in Exhibit "B" are not only in line with the prevailing market rates in this community for similar services by attorneys and

professional employees of reasonably comparable skill, experience, and reputations, but are deeply discounted rates charged for the benefit of investors. In addition, the Receiver has "no billed" substantial time and fees in this case.

The Receiver and his team each further represent that these hourly rates are comparable to rates actually billed and paid to attorneys and professional employees of comparable skill, experience, and reputation in cases of like nature before this Court, and have been consistently approved by other courts. The Receiver respectfully asks the Court to take judicial notice of the prevailing market rates in this legal community for similar services by the attorneys and professional employees of reasonably comparable skill, experience and reputation, and rely upon its own expertise to determine that the rates charged by the professionals identified in Exhibit "B" are reasonable.

<u>Whether the Fee is Fixed or Contingent.</u>  The fees of the Receiver and his professionals thus far in this matter are fixed hourly rates. However, payment of professional fees and expenses is contingent upon there being enough money in the receivership accounts to make such payments. At present, there is sufficient money available in this receivership to fund the activities of the Receiver and his team. Pursuant to the terms of the Receivership Order, the payment of professional fees is subject to Court approval.

Time Limitations Imposed by the Client or Other Circumstances.  Because a significant aspect of this Receivership is a search for money and other assets, time is critical, especially in the first weeks of this Receivership.  The investors in this case are anxious to have at least some of their funds, currently frozen, returned as soon as possible, and the Receiver is mindful of this demand in moving this case forward as quickly as possible.

The Amount Involved and the Potential Recovery.  This case involves investments of approximately $21,000,000, false profits of approximately $3,100,000 and "referral fees" paid of approximately $3,300,000.  With the Court's approval, the Receiver intends to pursue litigation to recover the amounts paid out in false profits and referral fees as outlined in his report filed on June 14, 2013.

The Experience, Reputation and Ability of the Attorneys.  The Receiver has more than 17 years of experience in civil litigation including securities law and is well respected in the legal community.  The Receiver has extensive experience in receivership work having worked on four previous cases pending the United States District Court of the Northern District of Georgia.

The Undesirability of the Case.  The case is not undesirable.

Awards in Similar Cases.  Based on his experience, the Receiver believes that the fees required in this case are consistent with fees awarded in similar cases in this district and elsewhere.

The Receiver has submitted this application and the attached invoice to the SEC for their review and approval.  The Receiver as attached as Exhibit "E," and email from the SEC approving this application.

WHEREFORE, the Receiver asks this Court to approve the fees and expenses reflected in Exhibit "D" and authorize the immediate payment of same and for such other and further relief as may be just and proper.

Respectfully submitted, this 15th day of July, 2013.

CAUTHORN, NOHR & OWEN

/s Jason L. Nohr_____
Georgia Bar No. 545435
Receiver

212 Church Street
Marietta, Georgia  30060
(770) 528-0150
(770) 528-0160 - facsimile

## CERTIFICATE OF SERVICE

This certifies that I have this day served a copy of the foregoing *Receiver's First Interim Application for Compensation and Reimbursement of Expenses and Brief in Support* via the CM/ECF electronic filing system which will send notice of such filing to counsel of record.

This 15th day of July, 2013.

                                                   /s  Jason L. Nohr
                                                 Georgia Bar No. 545435
                                                 Receiver

**CAUTHORN, NOHR & OWEN**
212 Church Street
Marietta, Georgia  30060
770.528.0150
770.528.0160 – facsimile
jln@cauthornnohr.com