IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION FILE |
| v. | ) ) | NO. 1:12-CV-04028-SCJ |
| BILLY WAYNE McCLINTOCK individually, and dba MSC HOLDINGS, DIANNE ALEXANDER aka LINDA DIANNE ALEXANDER, | ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| MSC HOLDINGS USA, LLC, MSC HOLDINGS, INC., MSC GA HOLDINGS, LLC, | ) ) ) ) | |
| Relief Defendants. | ) | |

## RECEIVER'S SIXTH INTERIM REPORT

Jason L. Nohr, the Receiver appointed by this Court by Orders dated February 11, 2013 and June 9, 2014, files his Sixth Interim Report to describe his investigation and detail his progress towards completing the tasks assigned by the Court.

The Receiver continues to be actively engaged in activities intended to identify and recover assets belonging to the Defendants and to quantify the losses incurred by the individuals who were victims of the Defendants' Ponzi scheme.

In a June 14, 2013 Report and Recommendation to the Court, the Receiver described the results of his preliminary investigation indicating the existence of potential claims against the Defendants and third parties.  The Receiver recommended proceeding with these claims because they appear to be viable and will likely increase the assets of the Receivership Estate.  The SEC agreed with the Receiver's Report and Recommendation, and the Court entered an Order allowing the Receiver to proceed with the investigation and pursuit of third party claims on September 11, 2013.

The Receiver's staff then proceeded to conduct a diligent review of voluminous documents and information that confirm money paid out of the Defendants' Ponzi scheme in "false profits" and sales commissions.  The Receiver's staff has thoroughly reviewed large amounts of bank documents which evidence the money taken from the MSC Holdings bank accounts for the personal gain of Defendant Alexander.

The Receiver is mindful of the need to balance the interests of identifying and pursuing viable third party actions against the need to preserve the assets of the

Receivership Estate.  The Receiver continues to be judicious with the expenditure of time and resources on this case and has written off substantial amounts of hourly time to reduce his fees in this matter.  The Receiver's initial fee application was, therefore, less than the agreed upon amount for the initial phase of investigation and the Receiver has foregone a fee upon the return of over three hundred thousand dollars of received assets.

### Procedural and Factual Background

On November 19, 2012, the U.S. Securities and Exchange Commission ("SEC") filed an application for a temporary restraining order and other equitable relief, alleging that Defendants Billy Wayne McClintock, individually and doing business as MSC Holdings ("McClintock"), and Dianne Alexander a/k/a Linda Dianne Alexander ("Alexander") were operating a type of Ponzi scheme known as a "prime bank fraud" from 2002 to the present using entities called MSC Holdings, Inc., MSC GA Holdings, LLC, and MSC Holdings USA, LLC (collectively "relief defendants").

The SEC alleged that Defendants McClintock and Alexander raised over $15 million from over 200 investors in more than 20 states, including Georgia, by telling investors that their money would be placed with a clandestine overseas entity that McClintock and Alexander refer to only as "the Trust." McClintock and

Alexander misrepresented that the Trust would generate a return of at least 38 percent.

On the same day, November 19, 2012, this Court granted the SEC application and entered an Order freezing assets of the Defendants, prohibiting the destruction of documents, and granting additional relief.

On February 11, 2013, the Court entered an Order appointing Jason L. Nohr as Receiver (the "Order of Appointment").  The Order of Appointment grants the Receiver access to assets, financial and bank accounts, and real property of the Defendants, the directive to recover, conserve, and expand the assets of the Receivership Estate, and, among other things, the authority to investigate and prosecute claims of the Receivership Estate against third parties.

The SEC's application for a temporary restraining order and other equitable relief determined that dozens of people received over four million dollars in so-called ""referral fees"" as compensation for introducing new investors to the Defendants' scam, with such "fees" representing the ill-gotten gains that must be returned and distributed to defrauded investors.

On November 28 and 29, 2012, Defendants McClintock and Alexander (respectively) consented to the entry of permanent injunctions against them and

agreed that the amount of disgorgement and civil penalties they would pay would be determined at a later date.

Defendant Alexander subsequently moved to partially lift the asset freeze on December 11, 2012 with respect to her monthly social security income and amounts allegedly necessary for the payment of attorneys' fees. On February 14, 2013, the Court entered an Order modifying the asset freeze to allow Defendant Alexander to collect her monthly social security benefits.

## The Receiver's Activities

Pursuant to the Court's Order of Appointment, the Receiver was to file an interim report within sixty (60) days addressing the Receiver's investigation to date, including identifying the assets and liabilities of the Receivership Defendants, identifying assets held by others that may be recovered by the Receiver, and an initial appraisal of the prospects for third party claims against those in possession of assets of the Receivership Estate, including but not limited to those receiving referral commissions and claims against investors who received more from the illicit scheme than they invested.

On April 15, 2013, the Receiver filed his First Interim Report pursuant to the Court's Order of Appointment. Since that time, the Receiver and his staff have been diligently engaged in completing the tasks he has been assigned to

accomplish.  The Receiver and his staff have continued to identify and work toward recovering assets of the Receivership Estate.  Their work has included determining whether the Defendants have assets of value that may be recovered and sold, identifying where the Defendants transferred the money received from "investors" as a result of their fraudulent activities, and investigating potential claims against third parties.  The Receiver has completed the initial investigatory phase of his activities and has begun to pursue third party claims on behalf of the Receivership Estate, as detailed in his June 14, 2013 Report and Recommendation to the Court.

The following is a summary of the Receiver's specific activities to date:

- Identified, located contact information, and presented notice of the receivership to fifty-eight (58) separate banking institutions in Florida, California, and nationally regarding potential accounts of the Defendants.  The Receiver sent notice of the receivership and the asset freeze, along with requests for financial documents and records, to these financial institutions across the country and in proximity to the Defendants' residential locations.  Those notices identify the Receivership Defendants, the multiple other entities through which

they operated, and demanded remittance of funds held in any Receivership accounts.

- Established three bank accounts in the name of the Receivership Estate.

- The Receiver recovered assets belonging to the Receivership Estate pursuant to an alleged "donation" by Defendant Alexander to R&A Ministry, Inc. in the amount of $91,284.03.  The transfer was made on November 29, 2012, in apparent violation of the Court's Asset Freeze Order of November 19, 2012 and the consent to permanent injunction agreed to by Alexander on November 28, 2012.  Upon demand by the Receiver for the return of the "donation," Robert Rohm of R&A Ministry presented a check to the Receiver for those funds on March 6, 2013.  Those funds have been deposited in the Receivership Account.

- Filed timely Notices of the Receivership in multiple jurisdictions where third party actions may later be necessary (pursuant to 28 U.S.C. § 754) in the United States District Courts for the Middle District of Florida and the Southern, Eastern, and Central Districts of California.

- Reviewed banking records of two separate Wells Fargo accounts for Billy Wayne McClintock.

- Contacted counsel for Defendant McClintock concerning failure to furnish financial documents and sworn statements required by the Court's Order of Appointment.

- Investigated, researched, and identified real property in Florida, Georgia, and California belonging to Defendants McClintock and Alexander, including property purportedly transferred to various "trusts." Located, contacted, and provided Notice of Receivership to the mortgage servicer (Cenlar FSB) for Defendant Alexander's real property located at Lake Lanier.

- Performed title searches and filed *lis pendens* on real property belonging to Defendants Alexander and McClintock in Florida and Georgia.

- Reviewed the financial statement and financial documents provided by Defendant Alexander.

- Reviewed documents for five separate accounts from Wells Fargo bank (including accounts for MSC Holdings and Linda Dianne Alexander).

- Interviewed and reviewed documents provided by attorney William Slater Vincent concerning legal work for Defendant Alexander and the establishment of the "Grace Abounds Trust" and escrow account.

- Interviewed and reviewed documents provided by attorney Kimberly Scouller concerning legal work for Defendant Alexander and the establishment of the "Alexander Family Trust" and escrow account.

- Interviewed and reviewed all documents provided by Mitchell Davis regarding tax filings prepared for Defendant Alexander.

- Reviewed documents received from Fifth Third Bank for account of Defendant McClintock.

- Reviewed documents received from Bank of America for account of relief defendant MSC Holdings.

- Reviewed documents received from Cadence Bank for account of relief defendant MSC Holdings.

- Reviewed documents received from SunTrust Bank for account of relief defendant MSC Holdings.

- Reviewed documents for three separate accounts from BB&T Bank for accounts held by Defendants McClintock and Alexander and Relief Defendant MSC Holdings.

- Reviewed statements from JP Morgan Chase for credit accounts held by Defendants Alexander and McClintock.

- Sent Notice of Receivership and demanded the production of information and documents to Paradise Holdings, LLC, an entity that received $400,000 from MSC Holdings in 2007.

- Engaged in ongoing communications with defense counsel regarding the location, value, and potential sale of Defendant Alexander's personal assets, including two automobiles, located in Carlsbad, California.  Engaged in communications with and provided Notice of Receivership to the landlord for Defendant Alexander's rental property in Carlsbad, California to ensure non-destruction of personal property during eviction proceedings.

- Presented Notice of Receivership and requested documents and information to Cloud Resources (regarding precious metals purchased by Defendant Alexander), Norman Dadian (former trustee for "Grace Abounds Trust" established by Defendant Alexander), Jade Law Offices (regarding "Grace Abounds Trust"), William Steckley and Anthony Dupont (former trustees for "The Promise Land Trust" established by Defendant McClintock), Charles Williams (current

10

trustee for "The Promise Land Trust"), and the law offices of Williams & Davis (regarding "The Promise Land Trust").

- Sent Notice of Receivership and asset freeze letters to Learn Waterhouse Receivership (subject to a potential claim of recovery by Defendant Alexander), First Choice Management Service (a receivership subject to a potential claim of recovery by Defendant Alexander), and Hide Away Storage (holding potential personal property of Defendant McClintock).

- Established a dedicated portion of the Receiver's law firm website to keep future claimants informed as to status of the ongoing litigation and the receivership estate. Updated and uploaded information and documents to the website, including court orders and the Receiver's interim reports and fee application.

- Compiled a detailed list of transactions evidencing the fraudulent transfer of funds from the Trust to Defendant Alexander.

- Communicated with investors and organized contact information and amounts paid to and received from the Defendants.

- Reviewed and organized data concerning ""referral fees"" paid by the Defendants to individuals as an incentive to increase the number of "investors" in the Defendants' Ponzi scheme.

- Deposed Defendant Alexander.

- Located and recovered a portion of the precious metals (including gold, silver and palladium coins, and silver bars) that Defendant Alexander purchased with Receivership assets from National Numismatic Associates ("NNA").

- Obtained three independent appraisals of the precious metals recovered from Defendant Alexander.

- Submitted the Receiver's first fee application to the SEC for approval on July 15, 2013 for the initial phase of the Receiver's activities in this case.

- Reviewed documents from Wells Fargo Bank for account held in the name of Paradise Holdings under the control of Defendant McClintock.

- Conducted research to locate All Big Ten, Inc., recipient of checks totaling $285,000 written from Paradise Holdings' Wells Fargo account.

- Conducted telephone interview with the owner/controller of All Big Ten, Inc. regarding money received from Paradise Holdings.

- Investigated Kentucky property records pursuant to investigatory leads to determine if Defendant McClintock acquired any such real property.

- Received and thoroughly reviewed account statements for American Express accounts held by Defendants.

- Prepared and mailed certified letters to 96 individual and corporate entities to verify money paid in to and received out of the Trust.

- Spoke with numerous investors regarding certified letters they received from the Receiver and status of case.

- Received and reviewed documents from numerous investors disputing information contained in certified letters.

- Began compiling, organizing, and comparing data and documents received from investors against that which the Receiver has already compiled to determine the amounts actually paid and received for a future claims process and proceeding with third party claims.

- Continued to compile documents and information pertaining to the transfer of funds from the Trust to Defendant McClintock.

13

- Researched market conditions for the sale of precious metals. Secured a buyer for and completed the sale of the precious metals recovered from Defendant Alexander resulting in recovery of $322,114.75 for the Receivership Estate.  Those funds have been deposited into the Receivership Account.

- Filed a claim with the court appointed Receiver for Zeek Rewards (Rex Venture Group) in an effort to recover money fraudulently transferred by Defendant Alexander.

- Located additional bank accounts under the control of Defendant McClintock and after discovering that those accounts were held at banks that failed, requested copies of those banking records from the FDIC.

- Continued comparison of information provided by Defendant Alexander to bank records obtained by Receiver to verify exact amounts paid to and received from Investors.

- Thoroughly reviewed documents from FDIC for failed banks where Defendant McClintock and Defendant MSC Holdings held accounts.

- Compiled documents and information for demand letter to investors who received "false profits" and "referral fees."

- Prepared and mailed letters to 96 individuals who received "false profits" totaling $3,463,478 and "referral fees" totaling $3,247,011.

- Received numerous letters and inquiries from investors and attorneys regarding Receiver's demand for return of "false profits" and "referral fees."

- Talked to numerous attorneys for investors and investors concerning demand letters regarding repayment of "false profits" and "referral fees" to the Receivership Estate.

- Prepared responses to letters and inquiries received from investors and attorneys for investors regarding repayment of money to Receivership Estate, including conducting legal research to explain the legal bases for the Receivership's recovery efforts and legal action against investors who referred "false profits" and "referral fees."

- Received checks totaling $1,077,581 (to date) from investors for the return of "false profits" and "referral fees" to the Receivership Estate. Collection efforts and negotiations concerning demand letters served upon investors continue.

- Compiled extensive information, documents, spreadsheets, and a Receiver's Declaration to support the United States Security and

Exchange Commission's motion for disgorgement against Defendants Alexander and McClintock.

- To date the Receiver holds $1,571,143 in the receivership accounts for the administrative claims process and future disbursement to defrauded investors.

- Sought reappointment by this Court in order to file Notices of Receivership in nineteen (19) separate federal districts to pursue third party claims for recovery.

- Submitted the Receiver's second fee application to the Court for approval on July 7, 2014 for his work in collecting over $1,000,000 in "referral fees" and "false profits" owed to the Receivership Estate.

- Begun preparation of the Complaint against over sixty (60) investors who received "false profits" and/or "referral fees" to recover funds owed to the Receivership Estate.

**The Receiver's Report**

The Receiver is engaged in all of the foregoing activities to date in order to identify and recover assets and timely complete the tasks set forth in the Order of Appointment.

The Court has approved the Receiver's recommendations concerning third party claims, and the Receiver has begun that process in order to recover amounts owed to the Receivership Estate by the Defendants and other third parties. Ultimately, the amounts recovered through pursuit of these claims and actions (in addition to the amounts the Receiver has already recovered) will be distributed to investors pursuant to a court approved administrative claims process (after the payment of costs, fees, and expenses).

Respectfully submitted this 31st day of July, 2014.

**CAUTHORN NOHR & OWEN**

/s  Jason L. Nohr
Georgia Bar No. 545435
Receiver for MSC Holdings

212 Church Street
Marietta, Georgia  30060
770-528-0150
770-528-0160 – facsimile
jln@cauthornnohr.com

17

## **<u>CERTIFICATE OF SERVICE</u>**

This certifies that I have this day served a copy of the foregoing *Receiver's Sixth Interim Report* via the CM/ECF electronic filing system which will send notice of such filing to counsel of record.

This 31st day of July, 2014.

/s  Jason L. Nohr
Georgia Bar No. 545435
Receiver for MSC Holdings

**CAUTHORN NOHR & OWEN**
212 Church Street
Marietta, Georgia  30060
770-528-0150
770-528-0160 – facsimile
jln@cauthornnohr.com