IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION FILE |
| v. | ) | |
| | ) | NO. 1:12-CV-04028-SCJ |
| BILLY WAYNE McCLINTOCK individually, and dba MSC HOLDINGS, DIANNE ALEXANDER aka LINDA DIANNE ALEXANDER, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| MSC HOLDINGS USA, LLC, MSC HOLDINGS, INC., MSC GA HOLDINGS, LLC, | ) | |
| | ) | |
| Relief Defendants. | ) | |

## RECEIVER'S SIXTEENTH INTERIM REPORT

Jason L. Nohr, the Receiver appointed by this Court by Orders dated February 11, 2013 and June 9, 2014, files his Sixteenth Interim Report to describe his progress towards completing the tasks assigned by the Court, including collecting assets and distributing them to the individuals victimized by the Defendants' Ponzi scheme. The Receiver completed a Second Interim Distribution of funds to defrauded investors and continues his collection efforts in preparation

for a final distribution and conclusion of the case. To date, the Receiver has sent disbursement checks to Claimants with Approved Claims in the total amount of $2,127,017, which represents a total reimbursement rate of 41.63% of those losses.

On June 1, 2017, the Court approved the Receiver's Motion to Approve an Initial, Interim Plan of Distribution ("Plan") [Doc. No. 118] and Amended Motion to Approve an Initial, Interim Plan of Distribution [Doc, No. 132], which were filed on December 9, 2016 and February 27, 2017, respectively. The Plan authorized the Receiver to distribute a large portion of the amounts recovered through pursuit of these claims and actions through a court approved administrative claims process to defrauded investors with approved and authorized claims. The Plan also provided a claim determination and classification based upon the Rising Tide method with respect to each Claimant and identified the specific amount each investor received subject to Court approval and consideration of any objections. The Receiver sought permission from the Receivership Court to make an initial distribution of over $1,600,000 to defrauded investors from the Receiver's collection and recovery efforts. Following consideration of several objections, the Receivership Court ultimately approved the Receiver's Plan of Distribution, thereby authorizing an initial disbursement of $1,677,075.56.

On May 29, 2020, the Receiver filed his Notice of Second Interim Distribution [Doc. No. 183] notifying this Court that he would be disbursing $449,941.44 to Claimants with Approved Claims under the Plan of Distribution previously approved by the Receivership Court. One of the reasons the Receiver proceeded with a Second Interim Distribution at the time was the adverse financial circumstances visited upon defrauded investors by the COVID-19 global pandemic. On June 15, 2020, the Receiver and his staff sent disbursement checks totaling $449,941.44 to Claimants with Approved Claims, thereby bringing the total disbursements to Claimants with Approved Claims to date to $2,127,017.00 for a total reimbursement rate of 41.63% of the losses of defrauded investors with Approved Claims.

The Receiver's collection efforts continue. Those efforts include efforts to collect on the judgments the Receiver obtained against investors who profited from the Receivership Defendants' scheme, including Motions to Compel and Citations for Contempt against Defendants who have not satisfied the judgments against them. The Receiver's collection efforts will proceed and culminate in an expected third and final distribution to Claimants with Approved Claims.

Since his appointment, the Receiver has been mindful of the need to balance the interests of identifying and recovering assets through third-party actions against

the costs of such efforts and the need to preserve Receivership assets. The Receiver believes that a third and likely final distribution will take place after resolution of the remaining collection actions.

## Procedural and Factual Background

On November 19, 2012, the U.S. Securities and Exchange Commission ("SEC") filed an application for a temporary restraining order and other equitable relief, alleging that Defendants Billy Wayne McClintock, individually and doing business as MSC Holdings ("McClintock"), and Dianne Alexander a/k/a Linda Dianne Alexander ("Alexander") were operating a type of Ponzi scheme known as a "prime bank fraud" from 2002 to the present using entities called MSC Holdings, Inc., MSC GA Holdings, LLC, and MSC Holdings USA, LLC (collectively "relief defendants").

The SEC alleged that Defendants McClintock and Alexander raised over $15 million from over 200 investors in more than 20 states, including Georgia, by telling investors that their money would be placed with a clandestine overseas entity that McClintock and Alexander refer to only as "the Trust." McClintock and Alexander misrepresented that the Trust would generate a return of at least 38 percent.

On the same day, November 19, 2012, this Court granted the SEC application and entered an Order freezing assets of the Defendants, prohibiting the destruction of documents, and granting additional relief.

On February 11, 2013, the Court entered an Order appointing Jason L. Nohr as Receiver (the "Order of Appointment"). The Order of Appointment grants the Receiver access to assets, financial and bank accounts, and real property of the Defendants, the directive to recover, conserve, and expand the assets of the Receivership Estate, and, among other things, the authority to investigate and prosecute claims of the Receivership Estate against third parties.

The SEC's application for a temporary restraining order and other equitable relief determined that dozens of people received over four million dollars in so-called "referral fees" as compensation for introducing new investors to the Defendants' scam, with such "fees" representing the ill-gotten gains that must be returned and distributed to defrauded investors.

On November 28 and 29, 2012, Defendants McClintock and Alexander (respectively) consented to the entry of permanent injunctions against them and agreed that the amount of disgorgement and civil penalties they would pay would be determined at a later date.

Defendant Alexander subsequently moved to partially lift the asset freeze on December 11, 2012 with respect to her monthly social security income and amounts allegedly necessary for the payment of attorneys' fees. On February 14, 2013, the Court entered an Order modifying the asset freeze to allow Defendant Alexander to collect her monthly social security benefits.

### The Receiver's Activities

Pursuant to the Court's Order of Appointment, the Receiver was to file an interim report within sixty (60) days addressing the Receiver's investigation to date, including identifying the assets and liabilities of the Receivership Defendants, identifying assets held by others that may be recovered by the Receiver, and an initial appraisal of the prospects for third party claims against those in possession of assets of the Receivership Estate, including but not limited to those receiving referral commissions and claims against investors who received more from the illicit scheme than they invested.

On April 15, 2013, the Receiver filed his First Interim Report pursuant to the Court's Order of Appointment. Since that time, the Receiver and his staff have been diligently engaged in completing the tasks he has been assigned to accomplish. The Receiver and his staff have continued to identify and work toward recovering assets of the Receivership Estate. Their work has included determining

6

whether the Defendants have assets of value that may be recovered and sold, identifying where the Defendants transferred the money received from "investors" as a result of their fraudulent activities, and investigating potential claims against third parties. The Receiver has completed the initial investigatory phase of his activities and has begun to pursue third party claims on behalf of the Receivership Estate, as detailed in his June 14, 2013 Report and Recommendation to the Court.

The following is a summary of the Receiver's specific activities to date:

- Identified, located contact information, and presented notice of the receivership to fifty-eight (58) separate banking institutions in Florida, California, and nationally regarding potential accounts of the Defendants. The Receiver sent notice of the receivership and the asset freeze, along with requests for financial documents and records, to these financial institutions across the country and in proximity to the Defendants' residential locations. Those notices identify the Receivership Defendants, the multiple other entities through which they operated, and demanded remittance of funds held in any Receivership accounts.

- Established three bank accounts in the name of the Receivership Estate.

- The Receiver recovered assets belonging to the Receivership Estate pursuant to an alleged "donation" by Defendant Alexander to R&A Ministry, Inc. in the amount of $91,284.03. The transfer was made on November 29, 2012, in apparent violation of the Court's Asset Freeze Order of November 19, 2012 and the consent to permanent injunction agreed to by Alexander on November 28, 2012. Upon demand by the Receiver for the return of the "donation," Robert Rohm of R&A Ministry presented a check to the Receiver for those funds on March 6, 2013. Those funds have been deposited in the Receivership Account.

- Filed timely Notices of the Receivership in multiple jurisdictions where third-party actions may later be necessary (pursuant to 28 U.S.C. § 754) in the United States District Courts for the Middle District of Florida and the Southern, Eastern, and Central Districts of California.

- Reviewed voluminous banking records of two separate Wells Fargo accounts for Billy Wayne McClintock.

- Contacted counsel for Defendant McClintock concerning failure to furnish financial documents and sworn statements required by the Court's Order of Appointment.

- Investigated, researched, and identified real property in Florida, Georgia, and California belonging to Defendants McClintock and Alexander, including property purportedly transferred to various "trusts." Located, contacted, and provided Notice of Receivership to the mortgage servicer (Cenlar FSB) for Defendant Alexander's real property located at Lake Lanier.

- Performed title searches and filed *lis pendens* on real property belonging to Defendants Alexander and McClintock in Florida and Georgia.

- Reviewed the financial statement and financial documents provided by Defendant Alexander.

- Reviewed numerous documents for five separate accounts from Wells Fargo bank (including accounts for MSC Holdings and Linda Dianne Alexander).

- Interviewed and reviewed documents provided by attorney William Slater Vincent concerning legal work for Defendant Alexander and the establishment of the "Grace Abounds Trust" and escrow account.

- Interviewed and reviewed documents provided by attorney Kimberly Scouller concerning legal work for Defendant Alexander and the establishment of the "Alexander Family Trust" and escrow account.

- Interviewed and reviewed all documents provided by Mitchell Davis regarding tax filings prepared for Defendant Alexander.

- Reviewed documents received from Fifth Third Bank for account of Defendant McClintock.

- Reviewed documents received from Bank of America for account of relief defendant MSC Holdings.

- Reviewed documents received from Cadence Bank for account of relief defendant MSC Holdings.

- Reviewed documents received from SunTrust Bank for account of relief defendant MSC Holdings.

- Reviewed documents for three separate accounts from BB&T Bank for accounts held by Defendants McClintock and Alexander and Relief Defendant MSC Holdings.

- Reviewed statements from JP Morgan Chase for credit accounts held by Defendants Alexander and McClintock.

- Sent Notice of Receivership and demanded the production of information and documents to Paradise Holdings, LLC, an entity that received $400,000 from MSC Holdings in 2007.

- Engaged in ongoing communications with defense counsel regarding the location, value, and potential sale of Defendant Alexander's personal assets, including two automobiles, located in Carlsbad, California. Engaged in communications with and provided Notice of Receivership to the landlord for Defendant Alexander's rental property in Carlsbad, California to ensure non-destruction of personal property during eviction proceedings.

- Presented Notice of Receivership and requested documents and information to Cloud Resources (regarding precious metals purchased by Defendant Alexander), Norman Dadian (former trustee for "Grace Abounds Trust" established by Defendant Alexander), Jade Law Offices (regarding "Grace Abounds Trust"), William Steckley and Anthony Dupont (former trustees for "The Promise Land Trust" established by Defendant McClintock), Charles Williams (current

11

trustee for "The Promise Land Trust"), and the law offices of Williams & Davis (regarding "The Promise Land Trust").

- Sent Notice of Receivership and asset freeze letters to Learn Waterhouse Receivership (subject to a potential claim of recovery by Defendant Alexander), First Choice Management Service (a receivership subject to a potential claim of recovery by Defendant Alexander), and Hide Away Storage (holding potential personal property of Defendant McClintock).

- Established a dedicated portion of the Receiver's law firm website to keep future claimants informed as to status of the ongoing litigation and the receivership estate.

- Continuously updated information and documents to the dedicated portion of the Receiver's website, including court orders and the Receiver's interim reports.

- Compiled a detailed list of transactions evidencing the fraudulent transfer of funds from the Trust to Defendant Alexander.

- Communicated with investors and organized contact information and amounts paid to and received from the Defendants.

- Reviewed and organized data concerning "referral fees" paid by the Defendants to individuals as an incentive to increase the number of "investors" in the Defendants' Ponzi scheme.

- Deposed Defendant Alexander.

- Located and recovered a portion of the precious metals (including gold, silver and palladium coins, and silver bars) that Defendant Alexander purchased with Receivership assets from National Numismatic Associates ("NNA").

- Obtained three independent appraisals of the precious metals recovered from Defendant Alexander.

- Researched market conditions for the sale of precious metals. Secured a buyer for and completed the sale of the precious metals recovered from Defendant Alexander resulting in recovery of $322,114.75 for the Receivership Estate. Those funds have been deposited into the Receivership Account.

- Submitted the Receiver's first fee application to the SEC for approval on July 15, 2013 for the initial phase of the Receiver's activities in this case.

- Reviewed documents from Wells Fargo Bank for account held in the name of Paradise Holdings under the control of Defendant McClintock.

- Conducted research to locate All Big Ten, Inc., recipient of checks totaling $285,000 written from Paradise Holdings' Wells Fargo account.

- Conducted telephone interview with the owner/controller of All Big Ten, Inc. regarding money received from Paradise Holdings.

- Investigated Kentucky property records pursuant to investigatory leads to determine if Defendant McClintock acquired any such real property in Kentucky.

- Received and thoroughly reviewed statements for American Express accounts held by Defendants.

- Prepared and mailed certified letters to 96 individual and corporate entities to verify money paid in to and received out of MSC Holdings.

- Spoke with numerous investors regarding certified letters they received from the Receiver and status of case.

- Received and reviewed documents from numerous investors disputing information contained in certified letters.

14

- Compiled, organized, and compared data and documents received from investors against that which the Receiver has already compiled to determine the amounts actually paid and received for a future claims process and proceeding with third party claims.

- Compiled documents and information pertaining to the transfer of funds from MSC Holdings to Defendant McClintock.

- Filed a claim with the court appointed Receiver for Zeek Rewards (Rex Venture Group) for funds fraudulently transferred by Defendant Alexander resulting in recovery of $24,345.94for the Receivership Estate. Those funds were deposited into the Receivership Account.

- Located additional bank accounts under the control of Defendant McClintock and after discovering that those accounts were held at banks that failed, requested copies of those banking records from the FDIC.

- Continued comparison of information provided by Defendant Alexander to bank records obtained by Receiver to verify exact amounts paid to and received from Investors.

- Thoroughly reviewed documents from the FDIC for failed banks where Defendant McClintock and Defendant MSC Holdings held accounts.

- Compiled documents and information for demand letter to investors who received "false profits" and "referral fees."

- Prepared and mailed letters to 96 individuals who received "false profits" totaling $3,463,478 and "referral fees" totaling $3,247,011.

- Received numerous letters and inquiries from investors and attorneys regarding Receiver's demand for return of "false profits" and "referral fees."

- Talked to numerous investors and attorneys for investors concerning demand letters regarding repayment of "false profits" and "referral fees" to the Receivership Estate.

- Prepared responses to letters and inquiries from investors and attorneys for investors regarding repayment of money to the Receivership Estate, including conducting legal research to explain the legal bases for the Receivership's recovery efforts and legal action against investors who received "false profits" and "referral fees."

- Received checks totaling $1,152,581 from investors for the return of "false profits" and "referral fees" to the Receivership Estate prior to commencement of litigation against those investors. Those funds have been deposited into the Receivership Account.

- Compiled extensive information, documents, spreadsheets, and the Receiver's Declaration to support the SEC's motion for disgorgement against Defendants Alexander and McClintock.

- Located and contacted utility companies providing service to the residences of Defendants Alexander and McClintock requesting payment information to obtain additional banking information for both Defendants.

- Sought reappointment by this Court in order to file Notices of Receivership in twenty-three (23) separate federal districts to pursue third party claims for recovery.

- Submitted the Receiver's second fee application to the Court for approval on July 7, 2014 for his work in collecting over $1,000,000 in third party claims owed to the Receivership Estate.

- Filed Notices of Receivership in twenty-three (23) separate federal districts to pursue third party claims for recovery.

- Prepared a Complaint against over eighty-one (81) investors who received "false profits" and/or "referral fees" to recover funds owed to the Receivership Estate.

- Conducted extensive research to locate and verify physical addresses for eighty-one (81) individuals who received "false profits" and/or "referral fees" from the Ponzi scheme run by Defendants Alexander and McClintock.

- Conducted extensive research to determine the federal districts of the defendants to be named in the Receiver's third-party action for recovery of "referral fees" and "false profits".

- Filed a Complaint on August 26, 2014 with this court against eighty (80) individual defendants who received "false profits" and/or "referral fees" from the Ponzi scheme.

- Served notice on the Defendants named in the Receiver's Complaint requesting Waiver of Service pursuant to Rule 4 of the Federal Rules of Civil Procedure.

- Received and filed fifteen (15) Waiver of Service of Summons forms with this Court.

- Prepared and submitted two declarations in support of the SEC's Motion for Summary Judgment against Defendants Alexander and McClintock for disgorgement penalties.

- Located process servers throughout the United States to perfect service on sixty-five (65) Defendants.

- Prepared service documents for those Defendants who refused to acknowledge service.

- Perfected service on over seventy (70) Defendants named in the Receiver's Complaint and filed the corresponding Proof of Service forms with this Court.

- Continued efforts to serve the few remaining Defendants where service has not been perfected.

- Submitted the Receiver's third fee application to the Court for approval on September 10, 2015 for his work in preparing, filing, and serving his Complaint against seventy (70) Defendants pursuing return of referral fees and false profits for the Receivership Estate.

- Settled claims against twenty-six (26) Defendants resulting in payments to the Receivership Estate totaling $694,872 with said funds deposited into the Receivership Account.

- Participated in a mediation involving fifteen (15) defendants successfully settling with nine (9) of the participants.

- Filed forty (40) responses and replies to separate motions and responses, including Motions to Dismiss, filed by Defendants in the Receiver's clawback actions filed in this Court.

- Prepared and filed an Amended Complaint in this Court in the Receiver's third-party action.

- Prepared and filed the Joint Discovery Plan and Initial Disclosures as required by this Court in the Receiver's third-party action.

- Submitted the Receiver's fourth fee application to the Court for approval on March 22, 2016 for his work in defending and settling portions of the Receiver's Complaint filed against seventy (70) Defendants that received false profits and referral fees and made approved distributions to the court authorized forensic accountant and litigation counsel.

- Prepared and filed a Motion in Support of Entry of Default Judgment and Brief in Support (with supporting Declaration by Receiver) against thirty-five (35) Defendants who had not answered the Complaint served upon them.

- Obtained Default Judgment against twenty-eight (28) Defendants totaling $1,769,393.

- Obtained Certified Abstracts of Judgments against Defendants in default from the Clerk's office.

- Initiated proceedings in multiple states, including Georgia, to collect judgments the Receiver obtained against multiple Defendants, including perfecting liens upon real property owned by Defendants.

- Collected $634,459 from eighteen (18) Default Defendants with said funds deposited into the Receivership Account.

- Hired a private investigator to assist in locating assets of Default Defendants.

- Sent letters to six (6) banks to locate assets of Default Defendants.

- Litigated clawback actions against remaining Defendants (not in default and who did not settle) culminating in Motions for Summary Judgment (including multiple declarations) before the Receivership Court.

- Entered an appearance in Eleventh Circuit appellate proceedings initiated by a Default Defendant who filed a Notice of Appeal to oppose appeal and defend default judgment.

- Filed a Motion for Contempt against Defendant Alexander for her failure to follow this Court's Order regarding surrender of real property.

- Prepared and filed a Response in Opposition to HSBC/SLS's Motion to Intervene and Modify Asset Freeze to foreclose on the Rebel Road real property and negotiated with HSBC/SLS's counsel regarding all issues relating to the property.

- Began leasing the property located on Rebel Road in Cumming, Georgia resulting in collection of $28,500 in rental payments. Those funds have been deposited into the Receivership Account.

- Began the appraisal process for selling the real property located on Middlecreek Way in Cumming, Georgia.

- Interviewed and hired a forensic accountant and fraud examiner to examine bank records obtained for Defendants and Relief Defendants to provide expert opinion supporting Ponzi scheme presumption.

- Consulted with and assisted in preparation of expert report by forensic accountant and service of report upon all remaining Defendants in clawback litigation.

- Prepared Receiver's expert witness and forensic accountant for discovery deposition and defended discovery deposition in Statesboro, Georgia.

- Prepared and filed Supplemental Initial Disclosures as required by this Court in the Receiver's clawback actions.

- Prepared and filed a Proof of Claim form with this Court for approval.

- Mailed 152 Proof of Claim packages to potential claimants seeking reimbursement from the Receivership Estate.

- Received, reviewed, and archived 130 Proof of Claim packages for further approval in the claims process.

- Verified documents and claim forms for 89 timely filed Proof of Claim packages.

- Prepared and filed with this Court the Receiver's Motion to Approve Plan of Distribution and First Interim Distribution.

- Prepared and filed with this Court the Receiver's Motion for Order Establishing Deadline for Filing Objections to Receiver's Plan of Distribution.

- Received documents from various claimants in response to Receiver's Motion to Approve Plan of Distribution.

- Submitted the Receiver's fifth fee application to the Court for approval on January 20, 2017 for his work in defending and settling claims against Defendants totaling $307,065, for his work in receiving and verifying all timely filed claims packages, and for preparation of the Plan of Distribution.

- Deposited additional funds into Receivership bank account of amounts collected from outstanding judgments and preparation and filing of Stipulations of Dismissal for resolved collection cases involving satisfied judgments.

- Hired a CPA and compiled the documents and information necessary to file all required Receivership tax returns.

- Prepared and filed with this Court the Receiver's Amended Motion to Approve Plan of Distribution and First Interim Distribution.

- Prepared and filed with this Court the Receiver's Amended Motion for Order Establishing Deadline for Filing Objections to Receiver's Plan of Distribution.

- Prepared and filed a Response to HSBC's Renewed Motion to Intervene and Modify Asset Freeze to foreclose on the Rebel Road real property.

- Negotiated with HSBC/SLS's counsel a settlement of the outstanding lien amounts placed upon the Rebel Road property by HSBC/SLS arising from their intervention activities and mortgage and security deed on the Rebel Road real property.

- Negotiated a sale of the Rebel Road real property resulting in a net recovery to the Receivership Estate of $117,402.74.  Those funds have been deposited into the Receivership Account.

- Obtained a real estate agent and prepared the Middlecreek Way property for sale.  Received multiple offers and negotiated a sales contract of the Middlecreek Way real property for $345,000.

- Moved for and obtained Court approval to proceed with the sale and closing of the Middlecreek Way real property.

- Began transfer of the property title for the Braden Run property to the Receivership Estate.

- Attended a mediation before a United States Magistrate Court judge of the Receiver's claims against Frank and Teresa Vogel in Case No. 1:14-cv-02761-SCJ.

- Prepared for trial, including preparation of a Consolidated Pre-trial Order, in the action against Frank and Teresa Vogel.

- Prepared multiple responsive pleadings to Promise Land Trust's Motion to Set Aside Judgment awarding possession of Defendant McClintock's Bradenton, Florida property to Receivership, including Response to Motion to Set Aside Judgment in August of 2017, Motion to Strike Reply to Response to Motion, Receiver's Motion to Strike Promise Land Trust's Improper Declaration Submitted in Reply Brief and Motion to Intervene in September of 2017, and Response to Motion to Intervene in April of 2018. Communicated with United States Marshall's Office in Middle District of Florida throughout this time period regarding Bradenton, Florida property. Awaited Court's ruling on Receiver's opposition to pending Motion to Set Aside Judgment in order to dispose of and liquidate Bradenton, Florida real property previously owned by Defendant McClintock and distribute assets through administrative claims process.

- Issued seventy-two (72) checks distributing $1,677,075.56 to defrauded investors of the Defendants' Ponzi scheme.

- Prepared Declarations in support of Notices of Filing Consent to Judgment by MSC Holdings USA by Securities & Exchange Commission.

- Communications with and direction over successful and ongoing collection efforts by Busch, Reed, Jones & Leeper, P.C. regarding multiple judgments from judgment debtors.  Additional research and investigation on recoverable assets and whereabouts of judgment debtors.

- Began leasing the property located on Braden Run in Bradenton, Florida resulting in collection of $16,181 in rental payments. Those funds have been deposited into the Receivership Account.

- Litigated and opposed The Promise Land Trust's Motion to Set Aside the judgments giving the Bradenton, Florida real property previously owned by Defendant McClintock to the Receivership.

- Defeated The Promise Land Trust's Motion to Set Aside the judgments giving the Bradenton, Florida real property previously owned by McClintock to the Receivership, resulting in an Order by the Receivership Court confirming that the real property was properly secured by the Receiver and authorizing him to take steps to ready the property for sale.

- Arranged for four (4) independent appraisals of the Braden Run real property to determine the minimal amount necessary for Court approval of any private sale of the property.

- Collected written reports of independent appraisers necessary to obtain approval from the Receivership Court for private sale of the Braden Run real property.

- Paid ongoing maintenance and insurance costs and taxes for the Braden Run real property necessary to preserve the asset for ultimate private sale.

- Obtained a real estate agent to market and sell the Braden Run real property.

- Per recommendations of real estate agent, took steps to prepare the Braden Run property for a private market sale, including undertaking necessary repairs and improvements to the house and property to obtain an optimal sale price balanced against the costs of such undertakings.

- Filed multiple Motions to Compel with the Receivership Court in collection actions against Defendants who have not satisfied the judgments against them.

- Filed multiple Motions for Citation of Contempt with the Receivership Court in collection actions against Defendants who have not satisfied the judgments against them.

- Obtained professional opinion of real estate agent concerning current condition of Bradenton, Florida real estate market and impact of COVID-19 global pandemic and related economic downturn upon private sale of Braden Run real property.

- Sold the Braden Run real property collecting $304,668.26 for the Receivership.

- Sent asset freeze letters to seventeen (17) separate banks in the Daytona Beach, Florida area to locate bank assets belonging to a default Defendant.

- Issued seventy-eight (78) checks distributing $449,941.44 to Claimants with Approved Claims during Second Interim Distribution under approved Plan of Distribution.

- Proceeded with various hearings on Motions to Compel before the Receivership Court against judgment creditors and Defendants in claw-back actions to collect on judgments against those who profited from the Receivership Defendants' Ponzi scheme.

- Engaged in asset searches with dozens of banks and financial institutions to collect on judgments against those who profited from the Receivership Defendants' Ponzi scheme.

### The Receiver's Report

The Receiver is engaged in all of the foregoing activities to date in order to identify and recover assets and timely complete the tasks set forth in the Order of Appointment. As of April 19, 2021, the cash on hand in the Receivership's bank accounts totals $765,728.50. In pursuit of identifying and recovering assets and pursuing litigation against those individuals who benefited from the Receivership Defendants' Ponzi scheme and in processing the first and second interim distributions to defrauded investors, the Receivership Estate has disbursed a total of $49,875.60 in expenses to date.

The Receivership Estate paid $4,769.87 to SLS for the outstanding amounts for property insurance and other expenses relating to the Rebel Road real property, pursuant to this Court's September 15, 2015 Order regarding HSBC's Motion to Intervene. The Receivership Estate paid $4,900.87 in expenses to maintain, repair, improve, and sell the real property located at 2697 Middlecreek Way. The Receivership Estate paid $10,718.81 in property taxes for the property located in

Bradenton, Florida. The Receivership Estate paid $21,946.76 in expenses to maintain and sell the real property located in Bradenton, Florida.[1]

In light of the events associated with the onset of the COVID-19 global pandemic, the Receiver made the decision to delay the sale of the Braden Run property to maximize the return to the Receivership. By delaying the sale until the summer of 2020, the Receiver was able to increase the proceeds for the sale of the Braden Run property.

The Receiver anticipates a third and potentially final distribution to follow at some later time after resolution of the remaining collection actions.

Respectfully submitted this 29th day of April, 2021.

**CAUTHORN NOHR & OWEN**

  /s  Jason L. Nohr
Georgia Bar No. 545435
Receiver for MSC Holdings

212 Church Street
Marietta, Georgia  30060
770-528-0150
770-528-0160 – facsimile
jln@cauthornnohr.com

---

[1] The total expenses for Braden Run to date are as follows: $12,205.98 for repairs and improvements; $6,266.29 for insurance; $1,750 for appraisals; and, $1,724.49 for utilities.

## **CERTIFICATE OF SERVICE**

This certifies that I have this day served a copy of the foregoing *Receiver's Sixteenth Interim Report* via the CM/ECF electronic filing system which will send notice of such filing to counsel of record.

This 29th day of April, 2021.

/s  Jason L. Nohr
Georgia Bar No. 545435
Receiver for MSC Holdings

**CAUTHORN NOHR & OWEN**
212 Church Street
Marietta, Georgia  30060
770-528-0150
770-528-0160 – facsimile
jln@cauthornnohr.com